# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **STEPHEN LINDSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:15-cv-02353-AKK** |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Stephen Lindsey filed this action against Experian Information Solutions, Inc. ("Experian"), for an alleged "intentional refusal to conduct a reinvestigation" in violation of section 1681i(a)(1)(A) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").  *See* doc. 1.[1]  The court has for consideration Experian's motion for summary judgment, doc. 25, and Lindsey's cross-motion for partial summary judgment on his willful violation claim, docs. 28; 30.  The motions are fully briefed, docs. 25; 28; 30; 33; 34; 35, and ripe for review.[2]  For the reasons stated below, Experian's motion is due to be granted, and Lindsey's motion denied.

_____

[1] The complaint pleads both negligent and willful violations of the FCRA.  *See* doc. 1 at 7.  However, because Lindsey advanced no arguments regarding the alleged negligent violation claim in response to Experian's motion for summary judgment, the court deems that claim abandoned.  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 971 n. 36 (11th Cir. 2008) ("Martin did not defend the claim on summary judgment; he thus abandoned it.").

[2] Experian's motion to address additional authority, doc. 36, is **DENIED**.

## I.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).  The moving party bears the initial burden of proving the absence of a genuine dispute of material fact.  *Id.* at 323.  The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id.* at 324 (internal citations and quotation marks omitted).  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor).  Any factual dispute will be resolved in the non-moving party's favor when sufficient competent

evidence supports that party's version of the disputed facts.  B*ut see Pace v. Capobianco*, 238 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.    FACTUAL BACKGROUND

In July 2013, Lindsey requested and received his personal credit report from Experian.  *See* SEALED doc. 26-1 at APP., p. 18.  The report reflected a $3,521 debt to Sam's Club, which Portfolio Recovery Associates, L.L.C. ("PRA") had purchased.  *See id.* at APP., p. 23; doc. 1 at 3.  PRA ultimately sued Lindsey in the Circuit Court of Jefferson County, Alabama.  After a trial on November 10, 2014, the court entered judgment in favor of Lindsey.  *See* SEALED doc. 26-1 at APP., p. 12.  That same day, Lindsey sent Experian a letter stating:  "I am writing to dispute an entry on my credit report.  I believe that Portfolio Recovery Associates,

LLC is reporting an account number with a sum claimed of $3,521.88 on my credit report." *See* SEALED doc. 26-1 at APP., p. 5.  Lindsey requested "that [Experian] investigate Portfolio's entry on [his] credit report and respond to [Lindsey] within thirty days." *Id.*  The letter included Lindsey's first and last name, home address, the Circuit Court case number, the judge's name and telephone number, the address and phone number for the Circuit Court Clerk, the contact information for Lindsey's attorney, Lindsey's date of birth, and the last four digits of Lindsey's social security number.  *See id.*

On November 19, 2014, the day after Experian received Lindsey's letter, *see* SEALED doc. 26 at 2, "[i]ndependently of the . . . correspondence [from Lindsey], . . . per the data furnisher's batch transmission, Experian deleted [the] trade line regarding [Lindsey] reported by Portfolio Recovery [Associates], LLC." *Id.*  The next day, in response to Lindsey's letter, Experian wrote Lindsey stating that it had "received a suspicious request regarding [Lindsey's] personal credit information that [Experian has] determined was not sent by [Lindsey]."  SEALED doc. 26-1 at APP., p. 8.  The letter further stated that "[Experian has] not taken any action on this request" and "[a]ny future requests made in this manner will not be processed and will not receive a response."  *Id.*  Finally, the letter stated:

> If you believe that information in your personal credit report is inaccurate or incomplete, please call us at the phone number that displays on your Experian personal credit report, or visit our secure web site at www.experian.com/dispute.  You also may write to us at

the address on your Experian personal credit report.  Be sure to include all of the following:  your full name including middle initial (and generation such as JR, SR, II, III); Social Security number; current mailing address; date of birth; and previous addresses for the past two years.

Include the account name and number for any item on your credit report that you wish to dispute, and state the specific reason why you feel the information is inaccurate.  The dispute process may take up to 30 days . . . . Once we complete the processing of your dispute, we will promptly notify you of the outcome.

*Id.*  In other words, Experian did not initiate any reinvestigation in response to Lindsey's correspondence.  SEALED doc. 26 at 3.

On December 1, 2014, Lindsey visited Experian's website to request his free annual credit disclosure.  *See* SEALED doc. 26-1 at APP., p. 40.  The report Lindsey received did not include the PRA account, which Experian had deleted a few weeks earlier.  *See generally* SEALED doc. 26-1 at APP., pp. 40–61.  Other than requesting this free report, there is no evidence that Lindsey utilized the procedures Experian outlined in Experian's letter to follow-up on his initial correspondence to Experian.

### III.   ANALYSIS

The FCRA requires a consumer reporting agency ("CRA") to conduct a free reinvestigation of a consumer's file if "the completeness or accuracy of any item of information contained in a consumer's file . . . is disputed by the consumer."  15 U.S.C. § 1681i(a)(1)(A).  After a reinvestigation, the CRA "shall provide written

notice to a consumer of the results of a reinvestigation." § 1681i(a)(6)(A). "As part of, or in addition to, the notice . . ., a [CRA] shall provide . . . a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation. . . ." § 1681i(a)(6)(B). The FCRA provides a private right of action against CRAs for willful violations of the duty to conduct a reasonable reinvestigation under § 1681i(a). *See Collins v. Experian Info. Solutions, Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015) (citing *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 53 (2007)).

Lindsey asserts that Experian willfully violated § 1681i(a) by describing his letter as "suspicious," "refusing to investigate," and failing to provide him with "notice of the reinvestigation results." Doc. 28 at 3, 6. Experian challenges Lindsey's contentions primarily on two grounds: (1) that Lindsey suffered no injury and, as such, has no standing to raise this claim; and (2) that it did not willfully violate the FCRA as a matter of law. Doc. 25 at 6. The court will examine these arguments in Sections A and B, below, beginning with the standing issue since it impacts the court's power to hear this dispute.

### A. Standing

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Camp Legal Def. Fund v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499

(1975)).  Indeed, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims," *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005), and "the court is powerless to continue," *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999).  Standing requires that a plaintiff show that

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Pittman v. Cole*, 267 F.3d 1269, 1282 (11th Cir. 2001) (quoting W*hite's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000)).  For the reasons stated below, the court finds that Lindsey cannot satisfy the standing requirement.

### 1. Lindsey cannot prove he suffered an "injury in fact"

To support its contention that Lindsey has no standing to pursue this claim, Experian notes that it deleted the disputed account the day after receiving Lindsey's dispute letter and that there is no evidence that it issued a consumer report or disclosure containing the disputed information.  Doc. 25 at 6.  Lindsey disagrees and alleges that he "suffered actual damages" by "having to engage

counsel to clarify that the PRA trade line was deleted."[3]   Doc. 28 at 13.   This contention is unavailing because the attorney fees Lindsey seeks, which are only recoverable in the event of a "successful action," are not considered "actual damages" under the FCRA.   *See* § 1681n;[4]   *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665 (7th Cir. 2001) (stating, in the context of a FCRA case, that "if no injury is [proved] . . ., and as a result there is no case or controversy between the parties within the meaning of the Article III . . ., the plaintiff cannot base standing on a claim for attorneys' fees.") (citations omitted).

---

[3] Lindsey has explicitly disavowed any claim for mental anguish or emotional distress. *See* doc. 28 at 6 n.3 ("Plaintiff has elected to jettison his claim for emotional distress (as is his right to do) — making this purely a claim for statutory damages, punitive damages, and fees and costs arising from Experian's failure to investigate.").   Thus, his actual damages claim rests solely on the attorney fees he incurred.

[4] §1681n distinguishes between actual damages and attorney's fees**:**

**(a)** In general.  Any person who willfully fails to comply with any requirement imposed under this title . . . with respect to any consumer is liable to that consumer in an amount equal to the sum of —

> **(1) (A)** any *actual damages* sustained by the consumer as a result of the failure or damages of less than $100 and not more than $1,000; or
> **(B)** in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, *actual damages* sustained by the consumer as a result of the failure or $1,000, whichever is greater;

> **(2)** Such amount of punitive damages as the court may allow; and

> **(3)** *In the case of any successful action* to enforce any liability under this section, the costs of the action together with *reasonable attorney's fees* as determined by the court.

15 U.S.C. § 1681n (emphasis added).

8

Lindsey correctly notes, however, that he does not need actual damages to establish a willful violation of the FCRA.  *See* doc. 28 at 6.  Still, Lindsey must prove an "injury in fact" sufficient to confer Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016); *In re Cmty. Health Sys.*, No. 15-cv-222-KOB, 2016 U.S. Dist. LEXIS 123030, at *56 (N.D. Ala. Sept. 12, 2016).  In *Spokeo*, the Supreme Court held that Article III standing requires a concrete injury even in the context of an undisputed procedural violation.  *Id.* at 1549.  As the Court explained, "[i]njury in fact is a constitutional requirement, and . . . Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Id.* at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)) (some quotation marks omitted); *see also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima.").

Lindsey maintains that he can satisfy the "injury in fact" requirement because he purportedly suffered a concrete injury as a result of Experian's decision to decline to open a reinvestigation in response to Lindsey's letter.  *See* docs. 25 at 18–19; 28 at 12–13.  Where, as here, the purported injury is intangible, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Spokeo*, 136 S. Ct. at 1549.  However, "Congress' role in identifying and elevating intangible harms does not

mean that a plaintiff *automatically* satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (emphasis added). In that respect, Lindsey misses the mark when he alleges that "even in the absence of a palpable economic injury, if the statute in question is designed to protect the plaintiff and confers on the plaintiff the right to sue for redress of a violation of the plaintiff's protected interest, *there is standing*," doc. 28 at 11 (emphasis added). To the contrary, a plaintiff cannot merely "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). This is precisely the case here given that Lindsey contends only that "by not notifying [him] of a reinvestigation result," Experian deprived him of his right under § 1681i(a)(6)(B)(v). Doc. 30 at 17–18. To have standing to assert a claim for a violation of § 1681i(a)(6)(B)(v), Lindsey must present evidence, at a minimum, that a third party requested or received one of his credit reports that incorrectly listed the PRA account. Absent such a showing, Lindsey has failed to satisfy the "injury in fact" requirement. *See, e.g.*, *Pittman*, 267 F.3d at 1282 (An injury in fact must be "actual or imminent, not conjectural or hypothetical."). Therefore, Lindsey lacks standing to bring this claim.

**B. Willful Violation of the FCRA**

Alternatively, Lindsey's claim fails because he cannot establish a willful violation under §§ 1681i(a) and 1681n.  The Supreme Court in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), expanded the contours of willfulness, holding that even "reckless disregard of a requirement of [the] FCRA would qualify as a willful violation within the meaning of § 1681n(a)."  *Id.* at 71.  Still, to find a willful violation, "[a]n interpretation that favors the [CRA] must be 'objectively unreasonable' under either the text of the Act or 'guidance from the courts of appeals or the Federal Trade Commission that might have warned [the CRA] away from the view it took.'"  *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009) (quoting *Safeco*, 551 U.S. at 70).  *See also Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3d Cir. 2012) ("[E]ven when a court disagrees with a party's reading of [the] FCRA, it may not impose liability for a reckless, and therefore willful, violation of that statute unless that party's reading is 'objectively unreasonable.'").

Lindsey contends that Experian willfully violated the FCRA when it sent him correspondence stating that it would take no further action in response to the "suspicious" letter it received.  *See* doc. 30 at 2.  The alleged facts fall short of the 'objectively unreasonable' standard necessary for a willful violation.  Specifically, after receiving the letter from Lindsey, Experian did not simply ignore it.  Rather,

Experian sought to confirm the letter's authenticity, in part, by requesting additional information Lindsey had not provided in his letter. *See* SEALED doc. 26-1 at APP., p. 8. Critically, Experian provided clear instructions to Lindsey on how to proceed if he, in fact, had sent the letter and wanted to resolve an alleged inaccuracy. *See id.* Lindsey ignored these instructions and never responded. His failure to do so — or Experian's decision to not initiate a reinvestigation — resulted in no harm here since Experian had already removed the disputed information the day before. Even if Lindsey is correct that his failure to include the additional information Experian cited did not render his correspondence "suspicious," *see* doc. 28 at 7, this fact does not create a willful violation because the Supreme Court and Eleventh Circuit have made clear that "objective[] unreasonable[ness]" is a high standard and that subjective bad faith, alone, is insufficient to prove a willful violation of the FCRA. *See Levine*, 554 F.3d at 1319 (citing *Safeco*, 551 U.S. at 70 n.20). In view of the undisputed evidence, the text of the FCRA, and the lack of any specific guidance from the Eleventh Circuit as to this particular issue, the court cannot find that Experian acted under an objectively unreasonable interpretation of the FCRA by requesting further information before agreeing to commence a reinvestigation.

## IV.    CONCLUSION

Because Lindsey lacks Article III standing or, alternatively, cannot establish that Experian willfully violated the FCRA, Experian's motion for summary judgment, doc. 25, is due to be granted, and Lindsey's cross-motion for partial summary judgment, docs. 28; 30, is due to be denied.  The court will enter a final order contemporaneously herewith.

**DONE** the 31st day of January, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE